SHADRACK WALL, plaintiff in error, *vs.* BARTLEY MC-CRARY, defendant in error.

NOTE.—WARNER C. J., did not preside in this case.

A new trial will be granted when the verdict is strongly against the weight of the testimony.

A charge unauthorized by the evidence is good ground for new trial.

Equity. Charge of the Court. Trial before Judge WORRILL, Marion Superior Court, April Term, 1867.

The case made by the bill is as follows :

Shadrack Wall, on the third day of Decemher, 1861, sold and conveyed to Bartley McCrary lots Nos. 186, 199, and 200, and the half of Nos. 185 and 218 each, all in the fourth district of originally Muscogee, then Marion County, containing eight hundred acres, at and for the price of $10,000, upon a credit.

It was to be paid for in installments, as follows : $1,333.33 due ——; $2,000.00 due 1st January, 1862 ; $3,333.33 due 1st January, 1863 ; and $3,333.33 due 1st January, 1864.

The first installment was paid, and all of the third was paid except $700.85.   After the last note became due, to wit, in January, 1864, McCrary proposed to pay off this last note and said balance on the third in Confederate Treasury notes of the old issue.   Wall refused to receive them.   Thereupon McCrary proposed that, if Wall would receive them and could not use them in payment of certain debts on Solomon Wall and Shadrack Wall as his security, that McCrary would take them back.   With this understanding the same was received, and said promissory notes delivered up.

Afterwards, to wit, in January, 1864, Wall offered said Treasury notes to Mrs. Amanda Butt, who held a claim against said Solomon Wall and Shadrack Wall as his security, and she refused to take them.

During the same month, Shadrack Wall notified McCrary (through one J. T. Wall) of said refusal, and requested that he would call at Shadrack Wall's house and receive back said Treasury notes, according to said promise.   McCrary refused to go to the house of Wall and take them back, and they have become worthless.

The prayer is for discovery, and that McCrary be compelled to pay said $2,000.00 note with interest, and the balance on the third installment aforesaid, and the last installment aforesaid with interest; and that the said lands be sold for the purpose of paying the same; and for injunction against the sale of said lots by said McCrary.

The injunction was issued.

The defendant answered the bill, but complainant afterwards amended the bill by waiving an answer, and so the answer was not read to the jury upon the trial, as evidence.

The evidence was as follows:

### EVIDENCE FOR COMPLAINANT.

Deed from complainant to defendant for said lands and at said price, dated 1st December, 1861.

The note of said date, due 1st January, 1862, for $2,000.

SOLOMON WALL testified that he was present at the sale of said lands; the price was $10,000.00, to be paid in gold;

Wall *vs.* McCrary.

there was no Confederate money then in circulation ; the notes given were for $1,333.33 and $2,000.00 due 1st January, 1862, and for $3,333.33 and $3,333.33 due respectively 1st January, 1863, and 1st January, 1864; the numbers of the lots of land were specified in the notes, because the parties thought that that would constitute a vender's lien ; defendant examined the lands before the purchase ; the lands were worth the price in gold ; witness sold the land to complainant to pay debts for which complainant had become witness' security, and complainant sold them to defendant to raise money to pay those debts ; witness in 1863, at complainant's instance, tried to pay a debt due by witness to Lamar, of Macon, on which complainant was security, but Lamar refused to take the money ; witness requested complainant to receive no more such money from defendant; in early part of February, 1864, complainant told witness that he, complainant, had received more Confederate money from defendant, which the complainant wished witness to pay to debts on which complainant was his security, and witness immediately called on Mrs. A. M. Butt, administratrix of E. C. Butt, deceased, and tried to pay such debt due her, but she refused to take such money ; witness told complainant of this refusal, and complainant requested him to tell defendant to come to complainant's house and take back said currency ; and some time after that, and a short time before the funding law was passed, witness, at an election of militia officers, told defendant of said refusal, and delivered said message; defendant said he would go and get the money.

At the time of the sale, the grist mill was in tolerable order, and in the condition as represented to McCrary ; and the lands were seen and known to McCrary at the time, and were worth the price agreed on without the mill. The debt due to Lamar was $2,300.00 and interest ; that due to Mrs. Butt was $3,500,00 ; that due to the estate of Stubbs, about $500.00 ; and that due to the estate of Battle was about $1,500.00 or $2,000.00.

JAMES T. WALL testified that he was requested by his father, Solomon Wall, to see defendant and tell him to go to

complainant and get the money which he had paid complainant; he saw defendant before the funding, and defendant said he would go to complainant's and get the money; that he promised to come back by complainant's when he went to Americus, but he could not, as he had to come by Buena Vista and bring Bulloch.

ELI G. PICKET (by interrogatories taken 25th January, 1867) testified that he was at complainant's house (about two years ago) about 25th January, 1864, overseeing for him and others; then saw defendant pay complainant $4,000.00 in Confederate money; complainant refused at first to take it; defendant told complainant to take the money, as he, defendant, was going to Americus, and would be back next day, or the day after, and would then give complainant a written promise to retake the money if was not good or would not answer complainant's purpose; complainant said : "do it now ;" defendant replied : "I can't do it now, but will as I come back from Americus ;" don't know age of complainant, but he is very old and feeble, nearly helpless, and has little power of locomotion; this occurred in complainant's room, and he said he would take the money with that understanding, as he wanted the money to pay a debt (witness thinks a security debt), and wished not to take it unless he could use it for that purpose; complainant insisted on the written promise then, but defendant insisted on waiting his return from Americus, and he did not return there ; witness says he charged his mind with the matter at the time, and has often thought of it since, and is clear in his recollection.

MARY GLOVER, complainant's daughter, testified by interrogatories in substance the same as Picket. She did not give the exact date. Was in the adjoining room and heard all the conversation ; defendant's excuse for not giving the writing then was that he was in a hurry.

Complainant in his own behalf (by interrogatories) testified that the original note (copying it) was given for 800 acres of land; he stated the contract as set forth in the bill; late in 1862 or early in 1863, defendant paid him $3,885.81 in Confederate Treasury notes, which was taken absolutely in

part payment of said land; about 1st January, 1864, defendant paid him about $4,114.18, which he accepted conditionally; he said this money was then dead; defendant made the promise to make it good if it proved bad, and promised the writing to that effect on his return from Americus next day, saying that he himself had taken it conditionally, and if it was worthless he would take it back and return it to the person from whom he got it; this was at complainant's house, in Schley County, Georgia.

The whole amount thus taken was funded in four per cent. certificates for Confederate bonds, which complainant now has; before the payment of the $3,885.80, witness had threatened suit if defendant did not pay, but after that payment he had not asked payment nor threatened suit.

Upon cross-examination, he stated that when this last payment was made to him he did give up to defendant two notes, but he gave them up conditionally: *i. e.*, McCrary would take back the money if it was not good, and give back the notes; Eli Picket, Mary A. Glover, and Georgia Glover were present at the time.

### EVIDENCE FOR DEFENDANT.

Defendant testified that he bought the lands and gave the notes as stated by the bill; that he paid off all of the notes except one for $2,000.00; that complainant represented the mill to be in good running order; that it cost the defendant about $1,200.00 in Confederate money to put it in good running order; that said last payment to Wall was absolute, and he did not promise to take the money back if Wall could not use it, nor did he promise to put this in writing on his return from Americus; but on his return from Americus he paid complainant $800.00.

JAMES ADAMS testified that he put the mill in running order for defendant, but did not recollect how much had to be done to it; he did not know what the lands and mill were worth; the mill would yield $500.00 or $600.00 annually above expenses; as a millwright, he thought the mill worth about $200.00.

JOHN MCMICHAEL testified that defendant borrowed $1000.00 of Confederate money from him in January, 1864, for what purpose he did not state; the land sold by complainant to defendant is now worth $8.00 to $10.00 per acre; considering the condition of the country, last fall it would have been worth $10.00 to $12.00 per acre, perhaps more; it was a good place and pretty fair land.

WM. M. BROWN testified that sometime in January, 1864, defendant borrowed $2,000.00 from him, as he stated, for the purpose of paying complainant.

HENRY PENN testified that complainant requested him to tell defendant, if he did not pay his notes he would sue him, sometime in the latter part of 1863 or first of 1864; that he so informed defendant, and defendant said that he would pay him, and started to Americus the next day; complainant lived on the road to Americus.

WILLIAM M. BUTT testified that he was one of the administrators of E. C. Butt, deceased, and that Solomon Wall came to him about 15th or 21st February, and proposed to pay a debt which himself as principal and complainant as security, owed said estate; witness agreed to take the money at first, but upon seeing Mr. Crawford, he refused to take it, (it was Confederate money) unless Wall would lose one-third which Wall refused to do; witness took Confederate money a few days before that time, (about $5,000.00,) from a Mr. Montfort, and would have taken it from Wall had he offered it a few days sooner; witness knew the lands, and thought them now worth only $7.00 per acre, owing to the condition of the country; by agreement with Amanda M. Butt, his co-administratrix, witness had the exclusive management of E. C. Butt's estate under the direction of Blanford & Crawford, Attorneys at Law.

Defendant also produced and read in evidence, the three promissory notes of same date with said deed, for $1,333.33 due January 1st, 1863, for $3,333.33 due 1st January, 1863, and for $3,333.33 due 1st January, 1864, which he claimed to have paid off.

The Court charged the jury that it was for them to find whether or not this was a case where the consideration should be scaled down, in order to do equity between the parties; that if they should find that false representations were made by Wall to McCrary touching the condition of the mills, and that the defendant acted on such in the purchase, then whatever it reasonably cost McCrary to put the mills in the condition represented, would be the measure of damages for such false representations, (this principle of law was conceded in the argument of the case, says the Judge); that it was the province of the jury, under the ordinance of the Convention and the evidence given in upon this trial, to adjust the equities of these parties and render a verdict upon principles of equity; that in rendering a verdict between these parties upon principles of equity, both sides admit that the value of the land in present currency, would be the proper criterion by which to make an equitable adjustment of this controversy; that after deducting the amount of purchase-money paid complainant by defendant, they would determine what the land was worth in present currency, and the amount of unpaid purchase-money together with interest, would be the amount of the verdict; that it was admitted in the argument that defendant was to pay complainant for the lands and mills in Confederate money, and complainant admitting that a large part of the purchase-money has been paid, has filed his bill to recover something over $6,000.00, which he avers is due to him from defendant, that defendant admits his liability to pay the $2,000.00 note, but contends that the $4,000.00 paid to complainant in January, 1864, was an absolute and not a conditional payment; that this was the great question in this case, and if at the time the money was paid, complainant received it under an agreement that defendant was to retake it if complainant could not use it to pay certain debts whereon he was security for Solomon Wall, and the proof shows that he could not pay those debts with the money, and in a reasonable time he gave defendant notice of this and sent him word to come and get the money, and defendant said he would do so, then complainant would be entitled to recover

·the $4,000.00; but if the jury should find the evidence to be as contended for by defendant's counsel, that defendant was only to take back the Confederate money or make it good in the event it was worthless, and complainant has not proved it was worthless, complainant was not entitled to recover.

The decree was that complainant recover $2,000.00 with interest from the 1st January, 1862, with costs; that this be a lien of said lands, that they be sold and proceeds applied to pay said sum, and if proceeds thereof were not sufficient therefor, complainant should recover the balance out of other property of defendant. The assignment of error is that the said charge was erroneous generally.

B. Hill, Blanford & Miller, solicitors for plaintiff in error.

B. B. Harteen, solicitor for defendant in error.

Harris, J.

1. There is a difficulty that this Court has to encounter very often, of passing upon the credibility of witnesses indirectly, who are utterly unknown to us, who are not sworn and examined in our presence,—which we feel very sensibly, and which furnishes generally the reasons for acquiescence in verdicts, especially when new trials are moved and refused by the presiding Judge. But cases sometimes come up which forbid that our practice should be unalterable—not to be modified. In this case all are paper witnesses. Three swear distinctly that the Confederate notes paid by McCrary were taken conditionally, *not absolutely*—that is, if old Mr. Wall could use these notes in payment of debts due by him—old man Wall being one of the three witnesses—and by them all circumstances attending the transaction are narrated. This body of testimony is really opposed only by the oath of McCrary in a general denial. If ever a verdict was rendered against the weight of testimony, this is the case. There must be a new trial on this ground. And whilst we award a new trial on the ground stated, we deem it proper to say

we are neither satisfied with the instructions of the Court, nor the manner of submitting them to the jury.

2. We find nothing in the record to authorize that portion of the charge in reference to false representations by Wall as to the mills, and the measure of damages in such case. There are other portions which do not accord with our ideas, in the mode of submission pursued, which we forbear to remark upon, as the case goes back for a re-hearing; and if it should be returned here again, it will come back unembarrassed by admissions said to have been made by counsel in the progress of the trial, which counsel *here* assert were misapprehensions of what they said.

New trial ordered.